THE STATE v. JOSEPH HAMILTON, Appellant.

Division Two, January 4, 1915.

1.  **EVIDENCE: No Proper Objection: Appeal.**   The objection that testimony is incompetent, irrelevant and immaterial raises no point for appellate review.

2.  ————: **Objection Sustained: Appeal.**   The defendant convicted of defiling a female under eighteen years of age con-

State v. Hamilton.

fided to his care and protection has no point for appellate review where his objection to testimony concerning the prior guardianship of the prosecutrix by an orphan's home was sustained on the ground that the records of the probate court were the best evidence.

3. ————: Register of Births: Orphan's Home: Showing Age of Prosecutrix. Under Sec. 6297, R. S. 1909, providing that when, by the ordinance or custom of any religious society in the State, a register is required to be kept of births, such register shall be admitted in evidence, the record of the Missouri Baptist Orphan's Home was competent, in a trial for defiling a female under eighteen years of age, to show the date of the birth of the prosecutrix, who had been an inmate of the home.

4. DEFILING FEMALE: Several Acts: Election: Waiver. A defendant on trial for defiling a female under eighteen years of age confided to his care and protection, has the privilege, when the evidence tends to show several acts of intercourse within the three years next preceding the filing of the information, of requiring the State to elect upon which act it will proceed, but where he does not exercise his privilege, and the State does not elect, and he is found guilty, he will be held to have waived the privilege.

5. JUDGMENT: "You" for "Defendant." A judgment and sentence which, after naming the defendant and proceeding in regular form, directs that "you" be imprisoned, etc., leaves no room, when the full context is considered, for doubt as to the identity of the person to be punished, and the cause will not be remanded for a new judgment and sentence.

6. ————: Uncertainty as to Place of Imprisonment: Corrected by Supreme Court. Where a recital that the defendant "stand committed to the custody of the sheriff until he be legally discharged by due process of law," renders a judgment uncertain as to the place of imprisonment, the Supreme Court, by virtue of Sec. 5316, R. S. 1909, will sentence the defendant to the proper place of imprisonment.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettingill,* Judge.

AFFIRMED.

*C. T. Llewellyn* and *B. L. Gridley* for appellant.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

WILLIAMS, C.—Upon an information charging him with the crime, under section 4479, Revised Statutes 1909, of defiling a female under the age of eighteen years, who had been confided to his care and protection, defendant was tried, in the circuit court of Clark county, Missouri, found guilty, and his punishment assessed at five years in the penitentiary. Defendant duly perfected an appeal.

The evidence on the part of the State tends to establish the following facts: Prior to August, 1910, the prosecutrix was an inmate of the Missouri Baptist Orphan's Home, situated near St. Louis, Missouri. On said date said Missouri Baptist Orphan's Home, by its deed, apprenticed prosecutrix to the care and custody of the defendant. Prosecutrix testified that she was seventeen years old on the 5th day of December, 1912. She continued to live at the home of defendant from August, 1910, until the latter part of March, 1913. She testified that a part of her duties at defendant's home was to assist in milking the cows in the barn; that defendant first made indecent proposals to her in the summer of 1911 and that in September, 1911, while at the barn, where she had gone to do the milking, she first submitted to him, and at that time defendant had sexual intercourse with her; that she and defendant engaged in other acts of sexual intercourse (the frequency of which is not given) between that time and January, 1913. On January 7, 1913, she gave birth to a child. Defendant had not kept company with any man during the time she lived at defendant's home. Defendant told prosecutrix that if any one should ask her about her condition and who was the cause of it, she should tell them that a "stranger" was responsible for it. On the night of the birth of the child, defendant called at a neighbor's home and requested the neighbor's wife to accompany him home to attend prosecutrix in her sickness. At the neighbor's home, defendant told his neighbor that the prosecutrix was

giving birth to a child and that it was a "bad case" and stated that "he expected it would be laid onto him;" to which the neighbor replied; "More than likely it will." The neighbor's wife accompanied defendant to his home and on the road defendant asked the neighbor's wife what he should do in a case like that. She replied that he should "hunt the owner." She asked him if the girl had been keeping company with anybody and he replied that he did not know of any company that she had kept and thought she was too young to keep company. He further stated, "In all probability the gentleman who did that work threatened her life and she won't tell." A day or so after the birth of the child, defendant sent for two or three neighbor women to come to his house. When they reached his home, he requested them to go, one at a time, into the room where prosecutrix was in bed and get a statement from her and to write down what she said and sign the statement. He further stated that he desired that they disclose the information thus obtained to the neighborhood. The ladies refused to take the statement of the girl.

After the birth of the child, prosecutrix remained at the home of defendant until March 27, 1913, and during this time stated that a stranger was the cause of her downfall. After she left defendant's home she changed her statement, and, on April 23, 1913, she, in company with others, called at the office of the prosecuting attorney and this prosecution was begun. She stated that she left defendant's home because defendant attempted to induce her to again submit to acts of sexual intercourse.

The only testimony offered on behalf of the defendant was his own testimony in which he denied that he had ever had sexual intercourse with the girl.

I. It is contended that the court erred in admitting, over the objection and exception of defendant,

**Evidence:
No Proper
Objection.**
the following evidence: (a) the testimony of prosecutrix as to the several acts of intercourse; (b) the testimony of Mrs. Eilers with reference to the guardianship of prosecutrix; (c) the entry in the register book kept by the Missouri Baptist Orphan's Home, stating, in substance, that prosecutrix was born December 5, 1895. As to point (a) it is sufficient to say that the only objection made by appellant to the introduction of that testimony was that it was "incompetent, irrelevant and immaterial." It is well settled that such an objection raises no point for appellate review. [State v. Crone, 209 Mo. 316, l. c. 330; State v. Castleton, 255 Mo. 201, l. c. 208, and cases therein cited.]

**Objection
Sustained.**
Concerning point (b) the record shows that Mrs. Eilers, the President of the Missouri Baptist Orphan's Home, was asked whether or not said organization was, on July 8, 1907, in the probate court of St. Louis, appointed the guardian of prosecutrix. Appellant objected on the ground that the court records were the best evidence of that fact and the court sustained the objection. This presents no point for review. Concerning point (c), the president of the organization testified that the

**Register
of Births:
Religious
Society:
Showing
Age of
Prosecutrix.**
Missouri Baptist Orphan's Home was a religious society and that it was required to keep, and that it was its custom to keep, a record of every child received, including a record of the date of the birth of the child received; that the entry as to the date of the birth of prosecutrix was made by the matron of the home in the book kept for that purpose. This book was produced and identified at the trial. Section 6297, Revised Statutes 1909, provides that "when, by the ordinance or custom of any religious society or congregation in this State, a register is required to be kept of . . . birth . . . such register shall be admitted as evidence." In objecting

to the introduction of this evidence, appellant did not assign any reason that would, in the light of said statute, render said evidence inadmissible. In support of his contention that the court erred in admitting the evidence the following cases are cited: Childress v. Cutter, 16 Mo. 24, and Morrissey v. Wiggins Ferry Co., 47 Mo. 521. But those cases furnish no aid to appellant's contention here. The point involved in those cases had to do with the admissibility of certain church registers kept in other States, in the first case a register kept in Louisiana and in the second case a register kept in New York. It was held that the above quoted Missouri statute was applicable only to such registers as were kept by religious societies in this State. It was further held that such registers were not admissible in evidence except when made so by statutory enactment and since no such showing was made with reference to the law of New York, in the one instance, or the law of Louisiana, in the other, the contents of said registers were not admissible.

II.   Instruction number 1 authorized the jury to find defendant guilty if they should find that he had defiled prosecutrix "at any time within three years prior to April 23, 1913" (the date of the filing of the information). Appellant contends that, since the evidence tended to establish several acts of sexual intercourse, the above instruction was erroneous in not confining the consideration of the jury to one act.

Defiling
Female:
Several
Acts:
Election:
Waiver.

Since it has been repeatedly held under this statute that unchaste character upon the part of the ward would not constitute a defense (State v. Nibarger, 255 Mo. 289), it is no doubt true that each act of sexual intercourse constituted a separate offense under the statute.

State v. Hamilton.

The general rule is that where time is not of the essence of the offense and the evidence undertakes to establish one offense only, it is not improper to instruct the jury that they may convict if they find that defendant committed the prohibited act at any time within the period of limitations. On the other hand, it has been held that where the evidence tends to establish more than one offense, the consideration of the jury should be limited to the evidence concerning a single particular offense. This on the theory that defendant is entitled to have the unanimous verdict of the jury with reference to one specific offense, whereas if the consideration of the jury is not limited to a particular act a part of the jury might believe him guilty of one of the offenses but not guilty of another, and the remainder of the jury might believe him not guilty of that one act but guilty of another act. The most important case cited and relied upon by appellant in support of the above proposition, and in support of his present contention that the case should be reversed because of said instruction, is the case of State v. Pruitt, 202 Mo. 49. While, at first glance, the Pruitt case appears to be in point, yet, upon a more careful examination thereof, it will be found to embrace matters making it clearly distinguishable from the case at bar. The point of distinction is that in the Pruitt case defendant filed a motion to require the State to elect upon which act it would rely for conviction, while in the case at bar no such motion was interposed. In the Pruitt case, the court said: "In cases of this character, where more than one act of intercourse has been proven to have occurred within three years next preceding the time of the filing of the information or the presentment of the indictment, it is the duty of the court, at the close of the State's case, *on motion of defendant for that purpose,* to require the State to elect upon which act it will rely for conviction," citing State v. Palmberg, 199 Mo. 233; and further, ". . . the

court should have required the State to elect, and have by its instructions restricted the jury in its consideration of the case to one of such offenses *in accordance with such election.*" (Italics ours).

It must be borne in mind that the State has the *right of election.* It is the defendant's privilege in a proper case to compel the exercise of such right of election by interposing a motion to that end. If the court overrules the motion an exception may be saved and the action of the court reviewed upon appeal. If the motion is sustained and the election made, the court should by its instructions limit the jury's consideration to the elected offense. However, in a case presenting a proper occasion for an election, as to which specific offense, among the many disclosed by the evidence, shall be submitted, but where, as here, defendant fails to exercise his privilege of demanding such an election, is the court to be convicted of error because it fails to limit the jury's consideration to that specific offense which the State *may have* selected if the defendant had set in motion the machinery which would have reduced the submitted case to one offense? We think not. The court should not be convicted of error in submitting the case in the condition in which the defendant was content to leave it. Under the present circumstances, if defendant entertained the fear that the unrestricted submission of the case to the jury would likely result in a verdict having its foundation in part upon one offense and in part upon another (a fear which, under the evidence in the present case, we are strongly inclined to believe would be more fanciful than real), he should have moved, in conformity with the proper practice, to require an election and thereby reduce the case to a specific offense so that the court could have submitted that offense to the jury. Failing therefore to pursue the proper practice by exercising this privilege, he must be considered as having waived the same and is in no position to complain

of the manner in which that phase of the case was submitted to the jury.

III.　It is next contended that the judgment and sentence of the court is imperfect, defective and insufficient. The judgment of the court was as follows:

**Judgment and Sentence.**

"State of Missouri, Plaintiff,

v.

Joseph Hamilton, Defendant.

"Now at this day comes the plaintiff by J. H. Talbott, Prosecuting Attorney, and the defendant, Joseph Hamilton, in his own proper person and by his attorneys C. T. Llewellyn and Bert L. Gridley, and the defendant being asked by the court if he had anything to say why sentence should not be pronounced and judgment rendered against him according to law, upon the verdict of the jury in this behalf, stood mute.

"Whereupon it is considered and adjudged by court that *you* be imprisoned in the penitentiary of the State at hard labor for a term of five (5) years, and that he pay the costs of this prosecution taxed ............ Dollars, and that he stand committed to the custody of the sheriff until he be legally discharged by due process of law."

It is insisted that the word "you" renders the judgment uncertain and that grave doubt exists as to which person is meant to be imprisoned. We are unable to agree with this contention. While it is true that the judgment is grammatically incorrect, and better English would have been used had the word "he," or still better had the words "defendant Joseph Hamilton" been used in lieu of the word "you," yet the word "you" when read in the light of the context of the entire judgment leaves no room for misunderstanding and doubt as to the identity of the person who is to be imprisoned and is not therefore a defect of sufficient

**"You" for "Defendant."**

importance to justify the remanding of the cause for a new judgment and sentence.

It is, however, further insisted that the last clause of the judgment, which states that defendant "stand committed to the custody of the sheriff until he be legally discharged by due process of law," renders the judgment uncertain as to place of imprisonment. That under the judgment as written "the sentence might be one of imprisonment in the penitentiary or by imprisonment in the custody of the sheriff." While it was undoubtedly the intention to so word the sentence as that defendant should remain in the penitentiary until he be legally discharged by due process of law, yet the language used, when literally construed, does state that he shall remain in the custody of the sheriff until discharged. In order to remove any ambiguity that might exist as to the place of imprisonment, we will, by performing the duty prescribed by section 5316, Revised Statutes 1909, proceed to sentence defendant to the proper place of imprisonment. [State v. James, 194 Mo. 268, l. c. 280.] It is therefore ordered and adjudged by the court that the defendant Joseph Hamilton be confined in the penitentiary of this State for a term of five (5) years, and that the sheriff of Clark county, Missouri, or other officer having such prisoner legally in charge, shall, with all convenient speed, convey said defendant to the State penitentiary of the State of Missouri and deliver him to the warden thereof, there to be imprisoned for the period of five years.

*Uncertainty as to Place of Imprisonment: Corrected by Supreme Court.*

*Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.