STATE of Missouri, Plaintiff-Respondent,

v.

W. A. BROOKSHIRE, Defendant-Appellant.

No. 23411.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1962.

334

W. A. Brookshire, Columbia, for appel-lant.

Larry M. Woods, Pros. Atty. of Boone County, Columbia, for respondent.

HUNTER, Presiding Judge.

Appellant, W. A. Brookshire, on January 29, 1960, in the Circuit Court of Boone County, Missouri, was charged with between January 21, 1960, and January 28, 1960, willfully and unlawfully confining on his farm near Columbia, Missouri, 27 Hereford cows without food, all in violation of Section 563.680 RSMo 1949, V.A.M.S.[1]

On January 30, 1960, appellant appeared in the Circuit Court of Boone County, Missouri, waived formal arraignment and entered a plea of not guilty. The cause was tried on October 12, 1960, and resulted in a jury verdict finding appellant guilty as charged and assessing his punishment at a $500.00 fine.

1. 563.680. "If any person shall impound or confine, or cause to be impounded or confined, in any pound, or other place, any animal or creature, and fail to supply the same during such confinement with sufficient food and water, * * * (he) shall be deemed guilty of a misdemeanor."

On October 18, 1960, appellant was granted an additional 30 days to file a motion for a new trial, and on November 10, 1960, appellant filed that motion. It was argued on February 8, 1961, and overruled on February 9, 1961. On February 17, 1961, appellant appeared and was sentenced in accordance with the verdict of the jury. Later the same day he filed his notice of appeal to this court.

At all times mentioned, appellant, a practicing attorney for many years, appeared pro se.

Appellant, on this appeal, charges three errors. First, he contends, "The information does not contain sufficient alleged facts to constitute an offense of any kind in 1, 2 and 3." Neither in his motion for new trial nor in his brief does appellant do more than to make this bare statement. Nowhere has he undertaken to shed any light on this contention by pointing out what elements of the offense are missing or where or in what manner the information is insufficient.

■ Criminal Procedure Rule 27.20(a), V.A.M.R., provides that a motion for a new trial shall be in writing "and must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." Appellant has not complied with the requirements of this rule. Even so, under our authority to examine for plain errors affecting substantial rights we have carefully examined the information. See Criminal Rule 27.20(c).

■ The test of the sufficiency of an information is whether it is (1) in writing (2) understandably states the essential facts constituting the offense charged and (3)

contains all the elements of the offense set out in the statute and be a bar to a subsequent prosecution for the same offense. State v. Tevis, Mo.App., 340 S.W.2d 415.

■ The information before us clearly meets the above test, and does contain sufficient alleged facts to charge the offense for which appellant was tried.[2] We find no merit in his contention to the contrary.

Appellant next contends the trial court committed reversible error in refusing to direct a verdict for defendant at the close of all the testimony offered by the State and by the defendant "for the reason there was no evidence of any character which showed a violation of any law of the State of Missouri." In connection therewith appellant argues that it is clear from the evidence that there was no malicious or criminal intent; that the evidence discloses he was badly injured and for some time physically unable to attend to his duties and to the feeding of his animals; that he had a colored man working for him who fed and tended the cattle while the appellant was injured and unable to do anything; that the cattle were not confined; that the cattle died of poisoning or some reason unknown to appellant; and "that the defendant was at every day attempting to obtain sufficient food for his animals."

At the trial evidence was adduced to the following effect: Appellant owns and occupies a 320 acre farm in Boone County approximately 10 miles south of Columbia, Missouri, adjacent to U. S. Highway 63. On this farm he had approximately 300 head of cattle and about 100 calves. During the time in question several neighbors in driving on Highway 63 by his farm saw numerous head of cattle "down" or dead.

2. "INFORMATION (Confining Cattle Without Food)—Comes now Larry M. Woods, Prosecuting Attorney within and for the County of Boone and State of Missouri, and upon his official oath informs the Court that W. A. Brookshire, between January 21, 1960, and January 28, 1960, at the said County of Boone and State of Missouri, did wilfully and unlawfully fail to supply twenty-seven (27) white faced Hereford cattle with sufficient food, he the said W. A. Brookshire having caused said cattle to be confined on his farm located about ten miles south of Columbia, Missouri on U. S. Highway 63, contrary to the statutes in such cases made and provided; against the peace and dignity of the State. (Filed January 29, 1960)."

Numerous dead cattle could be seen all up and down the hill to the southeast of appellant's house; also near a fence; in a pond; and near a barn. Complaint of the situation was made to the Prosecuting Attorney. Deputy Sheriff Earl Sebree, on January 28, 1960, was contacted by Dr. Stewart H. Boelsen, an assistant state veterinarian, and they, with others, went to the Brookshire farm. No one was there. At that time 27 dead cattle were counted on the premises. There were additional uncounted dead cattle in the barn. Numerous other cattle were weak. Dr. Boelsen examined many of the weak cattle and took their temperature. They looked for feed without success. They then drove around trying to locate the defendant but did not find him that day.

The next day, January 29, 1960, Dr. Boelsen with Mr. Sebree located Mr. Brookshire at his farm house. Mr. Brookshire told him "he had had very little feed, and at some time he had been hit in the head and he had been sick." They went to the barn and found more dead cattle. Some were confined to stalls. Dr. Boelsen saw no sign of disease. He gave his medical opinion that the cattle had just starved to death. He "asked him (Brookshire) about them and I think one of his first statements he made was that he just hadn't had any feed for the cattle." * * * "* * * he had had one load of hay in about 10 or 12 days."

There was evidence that the Brookshire farm was completely fenced and that the cattle were confined on the farm. Mr. Brookshire admitted he had sufficient money to buy feed, and that same day with Dr. Boelsen, and Mr. Sebree, purchased 100 bales of feed at a feed barn in Columbia, Missouri, and paid for it with a cashier's check which he obtained at a Columbia, Missouri bank. All 100 bales were fed that day to the surviving cattle. The next day, Saturday, January 30, 1960, the dead cattle, 43 in number, were trucked away to a rendering plant. A good many of the weak ones upon care lived.

Deputy Sheriff Sebree counted 27 or 28 dead cattle around the farm on January 28, 1960. Some were in the barn piled up on top of others and some were outside the barn. He searched and found no feed other than some 6 or 7 bales of hay in a garage. "Q. Did Mr. Brookshire say how long it had been since these cattle had had anything to eat? A. He said practically a week. Q. When did he tell you that? A. The 29th. * * * Q. And did you ask him if he had money to buy feed with? * * * He said he had."

Appellant Brookshire testified in his own behalf. He stated that on the night of January 9, 1960, he had been held up, robbed and beaten by two men. He was taken to the hospital. He had a colored man "who was doing my work and feeding my animals." He stayed in the hospital until Tuesday, January 12th. He testified as to efforts he then made to obtain feed. He obtained 300 bales from Iowa on January 14th. This was the last food he bought. He had expected his Iowa supplier to continue to bring him hay but he didn't.

Appellant denied any of his cattle were weak and down. He stated he had no reason to believe any were dying. He believed his colored helper, who left suddenly, poisoned the dead cattle as a part of a plot "with the men at the filling station" who were his enemies. As to the cattle he said, "Oh, some of them were thin but they were strong. They were getting around." He testified "it would take close to 500 bales" of hay to feed his herd for one week. "Q. You are a cattle man. Do you know how long it would take a Hereford, such as you had, to die from starvation? A. Well, it would take several days." He admitted 39 head had died during the time in question.

Five pictures of the dead, "down" and standing cattle taken during the mentioned time were introduced in evidence and shown to the jury.

We consider appellant's contention that there was no evidence of malicious

or criminal intent on his part. Criminal intent is an essential element of the offense of cruelty to animals established by Section 563.680. Although criminal intent is an essential part of the offense it may be inferred from the appellant's act of intentionally impounding and confining the animals and failing to supply them with sufficient food during such confinement. Both intent and cruelty may be inferred from such acts.

In a similar case, State v. Hirsch, Mo.App., 260 S.W. 557, the defendant was charged with unlawfully having failed to supply certain confined horses with sufficient food to prevent them from starving. There, the court said, loc. cit. 558: "With reference to appellant's complaint that the state did not show malice and intent, we need but say that these elements may be imputed from the facts, for, if it is shown that the defendant knowingly impounded these animals without food, malice may be inferred. * * * As to the intent, it of course is the law that to render an act criminal, a wrongful intent must exist. But when a wrongful act is committed under circumstances as shown here, it may be inferred that such acts were intentionally committed." The evidence of appellant Brookshire's act of confining the cattle on his farm in the winter in effect without food (a few bales of hay may have been provided) from January 21, 1960, to January 28, 1960, knowing that it would take "close to 500 bales" to feed his herd for one week and that they could die from starvation in "several days" is sufficient for the jury to premise a finding of the requisite malice and criminal intent contemplated by the statute.

Appellant argues his evidence of his injury, his physical inability to get around and his efforts to obtain feed for his herd demonstrate his lack of criminal intent. However, there was evidence that he did "get around" during the period in question. He did obtain feed quickly for his herd when the deputy sheriff accompanied him for that purpose. The credibility or lack of credibility of his evidence concerning his intent was a jury matter, and the jury chose not to accept his version of it. This it had the right to do.

While we have not undertaken to set out all of the evidence we have set out sufficient to show the lack of merit in appellant's second contention. If the jury chose to believe this evidence it was sufficient to be the basis of a verdict of guilty of the crime charged. Since the evidence made a submissible case the trial court did not err in refusing to direct a verdict for appellant.

Appellant's final contention is that the trial court committed reversible error in giving Instruction No. 4 "for the reason that there was no testimony of any character which would warrant the giving of this instruction and for the further reason the instruction is redundant and does not make clear to the jury what evidence they were to consider." In his brief appellant does not endeavor to amplify, explain, illustrate or particularize this charge of error. We have examined the instruction,[3] and find it free of any infirmities appellant charges to it. There is evidence to support the giving of the instruction. We do not perceive any redundancy in it, and it is both clear and concise. We are uncon-

3. Instruction No. 4: "The Court instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that the defendant W. A. Brookshire, at the County of Boone and State of Missouri, between January 21, 1960 and January 28, 1960, did willfully and unlawfully fail to supply twenty-seven (27) white faced Hereford cows with sufficient food, and if you further find beyond a reasonable doubt that the defendant W. A. Brookshire caused said cattle to be confined on his farm, then you will find the defendant W. A. Brookshire guilty of causing cattle to be confined without sufficient food and assess his punishment by imprisonment in the county jail for a term not exceeding one year, or by a fine not exceeding One Thousand Dollars, or by both such fine and imprisonment."

vinced that it could have misled or confused a jury of reasonable men.

The appellant has not demonstrated that any error prejudicial to him was committed in the trial of this case. Accordingly, the judgment of the trial court should be and is affirmed.

. It is so ordered.

All concur.