**KANSAS CITY, Respondent,**

v.

**John R. HELMS, Appellant.**

**No. KCD 28054.**

Missouri Court of Appeals, Kansas City District.

July 6, 1976.

Ronald J. Stites, Kansas City, for appellant.

Aaron A. Wilson, City Atty., Louis W. Benecke, City Pros., Louise C. Hipsh, Asst. City Pros., Kansas City, for respondent.

PRITCHARD, Chief Judge.

Upon his appeal from a conviction in Municipal Court, appellant was by the trial court found guilty of violations of the City's ordinances, Sec. 34.93, racing on streets and highways; and Sec. 34.118, fleeing or attempting to elude a police officer. The

trial court imposed sentences of 15 days confinement in the Municipal Correctional Institution on each charge, to run concurrently.

Appellant first says that the City did not meet its burden of proof in establishing his identity as perpetrator (as the driver of the automobile) beyond a reasonable doubt. The evidence, viewed in its light most favorable to the City, is this: On the evening of January 14, 1975, at about 5:55 p. m., officers Dowdell and Wagner were sitting in a police car in a parking lot at 105th Street and Blue Ridge Cut-off in Kansas City. At that time they saw an orange Chevrolet Nova moving northbound on Blue Ridge in the curb lane, without headlights, and at an estimated speed of 55 to 60 miles per hour, passing other vehicles. The posted speed limit was 40 miles per hour. The officers pulled onto Blue Ridge, turned on their lights and siren, and started pursuit. The vehicle continued to accelerate and turned east on 104th Street to Crystal, where it turned south to 105th Street, thence west a short distance to Corrington on which it travelled south and stopped in front of a residence at 10508 Corrington. In the course of the pursuit the officers never lost sight of the vehicle, being about 125 feet behind. On cross-examination Dowdell testified that distance was about 12 to 15 car lengths. After leaving Blue Ridge the officers encountered no other vehicular traffic. The officers were able to see that there were two people in the car, but could see only the backs of their heads. Officer Wagner testified that when the vehicle stopped in front of 10508 Corrington, the driver did not get out of it, but the person riding on the passenger side did. When the officers came up to the stopped vehicle, appellant was sitting in the driver's seat and stated to Dowdell that he had not been driving it, and that it had been sitting there all night.

Upon being alerted to the chase by Dowdell and Wagner, officer Bowman, who was in the vicinity, set up a road block with his vehicle on Corrington. From that position, about 150 to 200 feet away, he saw an orange Nova come around the corner and stop in front of a residence on Corrington. He saw the person get out of the passenger side and go about 5 or 6 feet away from it by the time the pursuing officers arrived, the time which elapsed being about 2 or 3 seconds. The driver of the car did not get out of it until the officers arrived.

Appellant's position at trial was that he had not been driving the car but had permitted a young man, a prospective purchaser to drive it, accompanied by appellant's girl friend, Laura White. At the time the chase was on, appellant was removing an air conditioner from another car he owned. He heard sirens, got out of the car he was working on and saw Laura running up to the house screaming. He ran to the vehicle and shut off the engine, and when the officers approached it he was behind the wheel with the door open and one leg out. Before this, the total time being 5 to 7 seconds, the young man who had been driving the car ran across the street and got into his own car, an orange Pinto, and appellant watched him drive away, in the opposite direction, north, from the police officers, as the police pulled up. [Officer Wagner testified that he saw no other vehicles move or leave the area where the pursued car stopped.] Appellant acknowledged that he had been with the young man, who was an interested buyer, in the vehicle before. He had known him about a month, but did not know his name. He knew that he lived in Ruskin, but did not know the address.

Laura testified that she had brought a meatloaf to appellant on the evening in question, and so he could eat it before it got cold she accompanied the young man in the car. She, too, had met the young man before when he was "over to buy the car a couple of weeks before that and then a time before that and they drank beer and just mouthed about the car." She also did not know (or remember) the driver's name although she had previously heard it. She described him as having long, blonde, shaggy hair, being kind of dirty, and that he did not have a beard, but possibly he had a

mustache. [Officer Dowdell testified that he observed that the driver of the car had dark hair (brown or black) when it passed in front of his headlights on Blue Ridge Cut-off.] In 5 or 10 seconds Laura reached the front door of the house after the car stopped, and that its driver jumped out of it and ran across the street where he sat in his Pinto with its motor running and its headlights off. She saw the Pinto leave in the direction the officers were coming.

■ The circumstances leading up to the finding by the officers of appellant at the wheel of his car compel the drawing of the clear inference that he had been driving it during the high speed chase. Any other conclusion would have required the court to disregard the positive testimony of the officers that as they chased the vehicle it was in their view at all times; that they saw it pull up to the Corrington address and stop; that they saw no one emerge from the driver's side of the vehicle where they found appellant; and that they observed no other vehicles move or leave the area of arrest. The court would have been further required to accept as true the version of appellant, and that of his witness, Laura, that there was an unknown third person who had been driving appellant's vehicle and who fled from the scene in his Pinto car. In its function of judging the credibility of witnesses and the conflicts in evidence, the court was not required to accept appellant's version of the facts. The testimony of the chasing officers that the vehicle was never out of their sight distinguishes factually this case and *Kansas City v. Stamper*, 528 S.W.2d 767 (Mo.App.1975), where the circumstantial evidence was held insufficient to sustain the conviction. Other cases which are cited by appellant are inapposite factually and state merely the general rules of treatment of circumstantial evidence: *State v. Canon*, 486 S.W.2d 212 (Mo.1972); *State v. Morse*, 515 S.W.2d 608 (Mo.App.1974); and *State v. Dupree*, 477 S.W.2d 129 (Mo.1972). More in point are the City's cited cases: *State v. Maxie*, 513 S.W.2d 338, 341 (Mo.1974), where it was said, "In a case involving circumstantial evidence, circumstances need not be absolutely conclusive of guilt and need not demonstrate impossibility of innocence * * *"; *State v. Gamache*, 519 S.W.2d 34 (Mo.App. 1975), where it was noted that any evidence showing any form of affirmative participation is sufficient. The trial court did not err in overruling appellant's motion for judgment of acquittal.

■ Without citation of authority, appellant in his Point II says the City did not meet its burden of proof in establishing intent beyond a reasonable doubt. *Kansas City v. Thorpe*, 499 S.W.2d 454 (Mo.1973), controls in its holding that intent could be deduced or inferred from the surrounding circumstances in the case, and that it is for the trial court to determine which inference should be drawn. Here the vehicle was being driven initially above the speed limit, and when pursued, it accelerated. Intent to evade the officers, and to speed, is clearly in the case. Point II is overruled.

■ Appellant's Point III is that the court abused its discretion in not reconsidering the sentence imposed because it did not consider the severity of the violation, appellant's past record or the hardships occasioned by the imposition of such a harsh sentence. Suffice it to say that Sec. 34.376 of the City's Revised Ordinances authorizes as a maximum a fine of not more than $500.00, and/or imprisonment for six months. The imposition of these concurrent 15 day sentences are much less than the maximum that the court, in its discretion, could have imposed; and of course they are within the range of punishments authorized by the ordinance. Appellant will have to serve his full 15 day imprisonment, unless upon his application, and in the exercise of the trial court's discretion, he shall be found eligible for and be granted participation in a work-release program. It is noted that in appellant's motion for new trial he states that he was employed full time and supported another individual.

The judgment is affirmed.

All concur.