STATE of Missouri, Respondent,

v.

Carl MITTS and Sam Sloan,
Jr., Appellants.

No. WD 31201.

Missouri Court of Appeals,
Western District.

Nov. 3, 1980.

James B. Wilson, Windsor, for appellants.

Larry M. Burditt, Warsaw, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and TURNAGE, JJ.

PER CURIAM:

Defendants Carl Mitts and Sam Sloan, Jr., were convicted, after trial to the court without a jury, of the violation of what is now § 578.060, RSMo 1978. That statute provides in part: "If any person shall impound or confine or cause to be impounded or confined in any pound or other place any animal or creature and fail to supply the same during such confinement of sufficient food and water . . . shall be deemed guilty of a misdemeanor . . ." The punishment assessed was a fine of $200 each. From such judgment and sentence the defendants have appealed to this court, complaining that the evidence was insufficient to sustain the conviction.

The allegation of the information is that the defendants, between the dates of September 1 and September 21, 1978, "did willfully, and unlawfully cause to be confined horses in their custody and control and failed to provide sufficient food and nourishment for said horses so confined". The appellants say that the evidence was insufficient, first, to show their "custody and control" of the horses; to show "confinement" of the horses; and finally, to show that sufficient "food and nourishment" were not furnished by defendants–or at least to show that defendants had the requisite "intent" not to furnish such food and nourishment.

The evidence showed the following facts:

The defendants Mitts and Sloan had secured from the Bureau of Land Management a total of 176 wild horses under the Bureau's "Adopt–a–Horse" program. The horses were hauled from Wyoming and Colorado in four different loads, the first in December 1977 and the last in June 1978. One hundred seven of the horses were placed in a pasture located near Lincoln, Missouri. It is these horses which the defendants are accused of keeping without sufficient feed.

In the latter part of August and the first part of September, 1978, owing to a drought and to grazing by the horses, the pasture in which the horses were placed–referred to as the "north pasture"–became so grazed down as to be completely without nutritious forage. There remained only inedible weeds which the horses could not or would not eat. Several of the horses became quite emaciated and showed signs of starvation. Four of them died.

Complaints were received by the Bureau of Land Management and by the Humane Society, who at mid–September sent representatives to investigate. They took two of the horses which were in the worst condition to the University of Missouri School of Veterinary Medicine at Columbia. The horses were pronounced moribund and beyond recovery, and were put to death. An autopsy revealed that the cause of their moribund condition was starvation. They had no diseases and were at a prime age.

Lying south of the north pasture where the horses were located and separated from it by a fence, was a pasture which had not been grazed. It had abundant forage on it, although there was evidence also that it was so dry that it would not have provided anything but fiber for the horses–that the lack of vitamin A and other nutrients would have allowed the starvation process to continue. There was a gate in the fence between the pastures. There was evidence that this gate remained closed during the six weeks preceding mid–September

when the representatives of the Bureau of Land Management and of the Humane Society appeared on the scene. To the contrary, there was also evidence that the gate had been open, at least from time to time, during the period, but that the horses would not go through it, and that defendants' efforts to drive them through had failed. This conflict in the evidence was for the trial court to resolve. *Kansas City v. Helms*, 538 S.W.2d 933 (Mo.App.1976); *State v. Brookshire*, 355 S.W.2d 333, 337 (Mo.App.1962). Assuming the gate was open, as defendants contended, it yet would remain a question for the trier of fact whether defendants should have taken other measures to provide feed for the starving creatures.

On September 21 the Bureau of Land Management removed the horses from the possession of the defendants.

■ As to defendants' contention that their "custody and control" of the horses was not shown, there is no lack of evidence that defendants arranged for the horses and placed them on their land. When the controversy arose over the alleged failure to furnish them with sufficient food, they dealt with the representatives of the Bureau of Land Management and the Humane Society. They testified at the trial to their feeding of the horses, to their attempts to get them into the south pasture and the like. They never, at or before the trial, denied their custody and control. The evidence was entirely sufficient to prove this element of the case. *State v. Brookshire, supra; State v. Hirsch*, 260 S.W. 557 (Mo. App.1924).

■ On appeal, defendants argue that their custody and control of the horses terminated when the Bureau of Land Management representative, Mr. Kellogg, appeared on September 15 and began to give specific direction about the care of the horses. Since the information charges that the defendants' offense continued from September 1 to September 21, they argue that there is a fatal variance between the information and the proof. We do not need to consider whether defendants' custody and

control would have terminated when Mr. Kellogg appeared and undertook to direct the care and management of the herd. We may dispose of the point by saying that it is not necessary for the state to prove that the condition continued during the entire period stated in the information, but only that it continued for some part of such period. Where time is not of the essence of the offense, the prosecution is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed on any day prior to the date of the information and within the period of limitations. *Kansas City v. Wilhoit*, 237 S.W.2d 919, 926 (Mo.App.1951); 42 C.J.S. Indictments and Information § 257 (1944). In this situation the offense was committed within the dates alleged and consequently, the information does not fail to properly inform defendants of the charge.

■ As to defendants' contention that the state's proof failed to prove that the horses were "enclosed", the fact that the horses were enclosed may be inferred from the direct evidence. There was direct testimony of fences on two sides of the pasture. The horses were visible from the highway and stayed in approximately the same area. The "pasture" was spoken of as a definite area. No testimony indicated they were free to range to the north or west to find pasture, although, as we stated before, defendants both testified in their own behalf. The fact that the horses were "enclosed", within the meaning of the statute, and prevented by some barrier from finding pasture, was a permissible inference from the evidence. *State v. Brookshire, supra; State v. Hirsch, supra.*

■ The insufficiency of the food and nourishment available to the horses is abundantly proved by the evidence which we have related earlier in the opinion. *State v. Brookshire, supra; State v. Hirsch, supra.* There was evidence from the defendants that when the pasture became inadequate, and before the Humane Society and the Bureau of Land Management appeared on

the scene, they distributed forty bales of hay every two weeks for the horses. There was testimony to support the trial court's finding that this amount of hay would have been insufficient for the horses' needs ... but there was also testimony from passers-by that they never saw any hay on the ground during the period in question. The conflict in evidence was for the trier of fact to resolve. *Kansas City v. Helms, supra; State v. Brookshire, supra.*

Finally, appellants contend that there was no evidence of criminal intent on their part. Criminal intent, sufficient to sustain the misdemeanor conviction under the present statute, may be inferred from the acts of intentionally confining animals and failing to supply them with sufficient food. *State v. Brookshire, supra; State v. Hirsch, supra.* Proof is not required that the defendants had a malevolent purpose to starve the animals in their care.

The evidence is sufficient to sustain the conviction.

The judgment is affirmed.