STATE of Missouri, Respondent,

v.

Robert Lee BULEN, Appellant.

No. WD 32950.

Missouri Court of Appeals,
Western District.

Feb. 1, 1983.

Lane L. Harlan, Boonville, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

■ Appellant Bulen was jury convicted of the forcible rape of Christina Burrows in violation of § 566.030 Revised Statutes of Missouri, 1978. Sentence was fixed at 5 years imprisonment. Appellant contends his motion for judgment of acquittal should have been sustained because of insufficient evidence and he cites error in allowing the cross-examination of himself concerning three statements he had given to the police. The judgment is affirmed. Based upon his first point, the facts in evidence and all favorable inferences reasonably drawn therefrom must be considered in a light most favorable to the state and all contrary evidence and inferences disregarded. *State v. Smith,* 527 S.W.2d 731, 732 (Mo.App. 1975).

Appellant who had just turned 18 had returned from Missouri National Guard basic training on July 31, 1980 to Boonville, Missouri. He first met the victim, approximately one year older than he, at the trailer of the babysitter for appellant's nephew and victim's infant daughter. This occurred about 4:00 p.m. on August 4, 1980. He followed the victim to her nearby trailer and asked if he could return later that evening. The victim said yes. Appellant, Burrows and Dwight Merciel, a dating friend and neighbor of the victim, talked and visited. Burrows then drove appellant to his sisters'. Burrows returned to her trailer between 9:00 and 9:30 that evening. Dwight came to visit, and at 10:00 p.m. appellant arrived. The three talked for about one hour. She asked both to leave— Dwight did so after offering three times to give a ride to appellant. Appellant refused the offers. Appellant stayed with the victim and suggested they "do something". She replied, "What?" "play cards?" He said "No. Let's neck". She asked him again to leave. Appellant got up from the sofa

turned toward the mirror as if he were tucking in his shirt. He then turned and came toward her. (She was seated in a chair three feet away from him.) As he did so his pants, being undone, fell to his knees. He pulled her to the floor. She was wearing a bathrobe and underpants. She screamed and resisted as he pinned her to the floor (he pinned her legs down with his knees). He held both her hands over her head with one of his hands and proceeded to pull her pants down with his other hand and at some time they came completely off. He then raped her. Appellant then got up and ran out of the trailer. A man named Darrell Winningham heard noise at the victim's trailer and went to investigate. As he did, he saw a person running from the area. He saw the victim and described her as nervous and upset. She told him she had been raped. The next morning, August 5, 1980, Dwight went to her place of employment and found her "white as a ghost and very hysterical" (sic). She told him appellant had raped her. That afternoon at about 3:30 she went to pick up her child. The sitter said she acted, "... different, kind of strange." An hour later the victim returned to the sitter's with Dwight and began to cry and said appellant had raped her. Several days later the sitter noticed a bruise on the victim's right thigh. That evening Dwight persuaded her to report the matter to the police, which she did at 6:00 on the evening of the 5th. She went to the hospital on August 6th for a blood clot in the lung. She told the treating physician she had been raped several days before and had developed chest pains a day later. The doctor testified such clots develop because of problems in the veins of the legs, of which he found none here, or because of a trauma to the legs or pelvic area.

■ Appellant who took the stand and denied intercourse with her submits the testimony of the victim was so contrary to the physical facts, surrounding circumstances and common experience as to be unconvincing and require corroboration. This point is ruled against him despite his reliance on *State v. Phillips,* 585 S.W.2d 517 (Mo.App.

1979). There was ample uncontradicted testimony of the victim to make any corroboration of her account unnecessary, *State v. Tripp*, 558 S.W.2d 809, 810 (Mo.App.1977).[1] Even if the victim's testimony would have been so tainted or contradictory, standing alone, to have taken the case to the jury, there was ample corroboration by several witnesses that the victim had complained of the rape. She had not reported it earlier to authorities because of fear for herself and her child, and under the circumstances here the trip to the police some nineteen hours later does not negate the fact the jury had sufficient evidence to render a verdict of guilt. Appellant's contentions that it was physically impossible for appellant to have caught the victim with his pants at his knees, or to have pulled her to the floor without waking the baby or knocking over furniture or pulling her pants down and off with only one hand, do not constitute physically impossible facts. The fact that the victim had testified that appellant pulled her pants down but could not explain how they came fully off her during the struggle is not of such significance as to make her testimony unbelievable. Appellant's first point is denied.

Appellant's other point regarding the use of his statements to police is somewhat difficult to follow. On August 5 at 10:40 at night, the day after the rape, at the request of police, appellant and his parents went to the Boonville police station. After being advised of his rights, he signed a *Miranda* waiver and wrote out a statement in which he said he went to Burrows' trailer the evening of the 4th, visited with Burrows and Dwight and he and Dwight left when Burrows said she had to go to sleep, but on his way out Darrell Winningham came to the door and said to appellant, "How are you doing?", to which appellant said, "Fine", whereupon appellant left. On August 19th he was arrested, advised of his rights. He signed a waiver and gave a

signed second statement. This statement admitted to his having had intercourse with the victim but that the victim had consented even though she had struggled with him. On August 20th he made a third statement, after waiver, which discounted the first two and said he grabbed her out of the chair and then pulled her down to the floor, took down the victim's panties, pinned her down and had intercourse with her despite her struggling and screaming for him to stop. He then got scared and ran out the door.

A motion to suppress the statements was filed by appellant and after an extensive hearing where various law enforcement personnel testified, along with appellant, this motion was denied. He does not claim error here for that ruling.

At trial appellant took the stand and categorically denied raping Burrows. When cross-examined and the subject of the three statements and the accompanying waiver came up, the objection was made that the state had "shown no proper foundation for their use even in impeachment purposes." The objection continued to the effect the state had the burden to show the waivers "were not obtained by force or threats". He stated the motion to suppress had decided the statements "may be admissible, but at the same time it does not affect the obligation of the state to show again, in front of a jury how the statements were obtained . . ." The judge allowed the prosecutor to lay his foundation and delayed ruling on the objection. The state then asked appellant if he talked to various members of the police department in August 1980 about the rape of the victim and the answers were affirmative. Appellant stated none of the officers had threatened him and they had been honest with him; he identified each of the waivers and statements and said all were executed voluntarily, no coercion had been brought to bear on him and that he had read the documents and his rights had been read or explained to

1. The general rule in rape cases is that corroboration is not essential to prove the act of intercourse unless the testimony of the prosecutrix is contradictory, in conflict with physical facts, surrounding circumstances and common experiences so as to be of doubtful value. The uncorroborated testimony of the prosecutrix is also normally sufficient to decide the issue of consent. *State v. Jakoubek*, 619 S.W.2d 880, 882 (Mo.App.1981).

him. When the statements and waivers were offered, appellant renewed his objection as to lack of foundation and that the state had not sustained the burden of showing how they were obtained. Appellant's objection was overruled. The statements were admitted and passed to the jury (for which appellant does not claim error).

There are two criteria to be used in Missouri in allowing cross-examination of the defendant of prior inconsistent statements for impeachment purposes, the state's purpose in this case. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). There must first be a showing the statement was voluntary, and second that the use of such statements must rest upon a proper foundation. *State v. Sager,* 600 S.W.2d 541, 557 (Mo.App.1980); *State v. Mitchell,* 622 S.W.2d 791, 796 (Mo.App.1981); *State v. Jakoubek, supra,* at 882; *Cf. State v. Mitchell,* 611 S.W.2d 211, 213 (Mo. banc 1981). Appellant does not question whether the waivers or the statements were obtained voluntarily. The transcript of the Suppression Hearing and of the trial makes it clear there could be no question on issue of voluntariness.

With regard to the second criterion, the laying of a proper foundation, the appellant on cross-examination admitted making all three statements. He recalled the time, place, circumstances, content and to whom the statements were made. *Sager, supra,* at 557–560. In this case both criteria spelled out in *Sager, supra,* to impeach the defendant were satisfied. This point is denied appellant.

Woven into this point, appellant makes two additional allegations as to the impropriety of the use of the three statements for impeachment purposes. He says since he did not testify on direct examination as to the inconsistent statements he could not be cross-examined about them by reason of § 546.260 Revised Statutes of Missouri 1978. This statute limits cross-examination of a defendant who takes the stand, to the facts developed "in his examination in chief". Appellant further contends in his request for a reversal that once he admitted making the prior inconsistent statements, he "stood impeached", and any further questioning "on details of the statements" went beyond the scope of cross-examination. These two arguments have not been preserved and can be treated only as plain error under Rule 29.12(b).

As was stated in *State v. Black,* 587 S.W.2d 865 (Mo.App.1979):

"Having testified in his own behalf, a defendant may be cross examined about those matters he testified to on his direct examination and he may be contradicted and impeached as any other witnesses. (Citations omitted). Furthermore, the state is not confined to a rote recitation or a categorical review of those matters covered on defendant's direct examination but, rather, may inquire into all matters within the fair purview of the direct examination. (Citations omitted). More specifically, if the defendant refers to a subject in a general way on direct examination, he may be cross examined in detail about that subject, and '[w]hen he states a fact in relation to his actions, the state may inquire as to particular circumstances which would throw light on that fact.'" (Citation omitted).

*Id.* at 878; *see also State v. Long,* 550 S.W.2d 854, 857 (Mo.App.1977).

Since appellant on direct examination categorically denied pulling the victim down and having intercourse with her and categorically denied any of the screaming, struggling or resistance by the victim, it was quite proper for the state to cross-examine him about his prior inconsistent statements. This cross-examination did not go beyond the prescribed limits. The questioning of him by the state, under circumstances here, did not result in a manifest injustice or a miscarriage of justice.

The judgment is affirmed.