STATE of Missouri,
Plaintiff-Respondent,

v.

Richard James ELLIS,
Defendant-Appellant.

No. 13991.

Missouri Court of Appeals,
Southern District,
En Banc.

April 7, 1986.

Motion for Rehearing and/or to Transfer to
Supreme Court Denied
April 28, 1986.

Application to Transfer Denied
June 17, 1986.

C.R. Rhodes, Neosho, and Robert P. Warden, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., and Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

A jury found the defendant guilty of two counts of sodomy upon an eleven-year-old girl. He was sentenced to imprisonment for ten years upon each count. The sentences are to run consecutively. He presents six points of alleged error.

For the disposition of those points, it is necessary to state the evidence supporting the verdict. In considering and recounting the evidence, this court is to accept as true the evidence, and reasonable inferences to be drawn therefrom, favorable to the verdict, and to reject the evidence and inferences to the contrary. *State v. Cooper*, 673 S.W.2d 848 (Mo.App.1984).

During the period in question, the victim and her seven-year-old brother lived in a house with their mother. The mother was a registered nurse who worked at the same hospital as the defendant's sister. In the summer of 1983, the defendant became the mother's "boy friend." He was unemployed. He spent three to five nights per week in the victim's home. He participated in activities of the victim's family. The victim stated she liked the defendant. She did not mind him living in the home. She thought she had to mind him.

The victim testified the first offense submitted to the jury occurred shortly before Christmas, 1983. Some of the details of her testimony concerning this date will hereafter be stated in detail. The defendant and the victim's mother had been out for the evening. When they returned, the mother left to take the baby sitter home. The victim was in bed in a downstairs bedroom. This bedroom was next to a bath in which there was a shower. She said the shower was working. She heard the defendant turn it on and it was running. The defendant then walked by the bedroom, naked, into the kitchen. He called to the victim to get him an ashtray. She left the bedroom, went into the kitchen and got him an ashtray. She started to return to the bedroom. The defendant called her back. In the doorway to the kitchen, the defendant committed an act of sodomy upon the child. He told her to tell no one.

The victim testified the second offense took place on January 2, 1984. She said the water pipes in the house were frozen. The defendant and one Don Tracy were attempting to thaw them. In the afternoon, her mother went to the hardware store. The victim declined to go with her. She watched television and then played the piano. She then went upstairs to play with her "Leggos." The defendant came upstairs. He placed her on the bed and com-

mitted an act of sodomy upon her. He again told her not to tell anyone. After that day, the defendant did not again live in the house. She saw him only one or two times after that.

The victim told no one until June, 1984. At that time, her mother had started to go with one Leon. The victim admitted she liked Leon. In that month she told her brother of the incidents. She said that she did so because she was afraid that the defendant might do the same thing to her brother.

The defendant did not testify. In an interview with an investigator, he denied the two acts. However, the investigator related that defendant made the following statements: "He said the only time he touched [victim] was when he picked her up to blow in her belly button preceding her taking a bath. And he had done that to the little boy, also, but it was just in a funny nature, with no bad intentions. ... He said she was usually nude and it was before taking a bath."

██ The defendant questions the sufficiency of the evidence by citing a rule requiring corroboration. He contends the judgment must be reversed under a rule restated in a decision of the Supreme Court of Missouri. "It is only in those cases where the evidence of the prosecutrix is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, that she must be corroborated or a judgment cannot be sustained." *State v. Baldwin,* 571 S.W.2d 236, 239 (Mo. banc 1978). Also stated in *State v. Bursley,* 548 S.W.2d 586 (Mo.App.1976).

> The rule has been criticized.
>
> Indeed our courts have demonstrated a decided inclination to recede from this special rule even in the specific instances of rape and incest, where the exception found its origin. Although the cases relied upon by defendant continue to be cited in court opinions, they are generally quickly distinguished and passed over.

On the other hand, sharp criticism of those cases are also to be found.

*State v. Platt,* 496 S.W.2d 878, 880 (Mo. App.1973). It is clear "[t]hat principle does not appertain, however, where the inconsistency or even contradiction bears on a proof not essential to the case." *State v. Salkil,* 659 S.W.2d 330, 333 (Mo.App.1983). Also see *State v. Johnson,* 595 S.W.2d 774 (Mo.App.1980).

To demonstrate that the cited rule requires reversal, the defendant emphasizes the victim's prior inconsistent statements concerning the dates of the offenses. Until two weeks before trial, she had stated the first offense occurred in October, 1983. At trial, she said she testified to the contrary because "we decided it had to happen in December." The "we" referred to were her mother and a Dr. Snider. He argues that she was not sure it occurred on December 23, 1983. To support his position, he refers to testimony such as the following:

Q. Today, in front of this jury, you're absolutely certain, are you not, that it happened during your Christmas vacation?

A. Right.

Q. Is that correct?

A. Right.

Q. Can you tell the jury whether it happened before or after Christmas?

A. It happened, I think, before.

Q. I'm having a hard time hearing you [victim]. I'm sorry.

A. I thought, I think it is before.

Q. Okay. When you were out of school?

A. Right.

Q. Wasn't your last day of school December 22, a Thursday?

A. Right.

Q. So you were out of school on Friday?

A. Right.

Q. The 23rd. Saturday was Christmas Eve, the 24th. Is that right?

A. Right.

Q. And Sunday was Christmas Day?

A. Right.

Q. You know it didn't happen on Christmas Day?

A. (Nods head.)

He also cites the fact the victim first reported that the second offense occurred in December. At trial she testified it occurred on January 2, 1984.

The evidence does establish the prior inconsistent statements by the victim concerning the dates of the offenses. However, there is no such inconsistency in her testimony at trial. As demonstrated by the testimony quoted above, she was firm in her testimony concerning when those offenses occurred.

Assuming, without deciding however, that her prior inconsistent statements can be considered in determining the applicability of the cited rule, it is not every inconsistent statement that makes that rule applicable. For example, it is held not applicable when a prosecutrix orally and in writing made a statement that her testimony concerning the commission of the offense given at a preliminary hearing was not true. *State v. Palmer*, 306 S.W.2d 441 (Mo.1957). Nor was the cited rule applicable because a prosecutrix at trial testified a defendant had perpetrated three separate rapes when at the preliminary hearing she testified he perpetrated five separate rapes. *State v. Salkil*, supra. Further, the cited rule has been held not to be applicable where the testimony of a prosecutrix was contradictory concerning who of four different men committed the offense and who helped her escape. *State v. Johnson*, supra.

These prior inconsistent statements of the victim concerning the dates are clearly distinguishable from the totally contradictory in-trial testimonial statements of victims going to the heart of offenses in *State v. Bursley*, 548 S.W.2d 586 (Mo.App. 1976), cited by the defendant. Incidentally, neither *State v. Neal*, 484 S.W.2d 270 (Mo. 1972), nor *State v. Gray*, 423 S.W.2d 776 (Mo.1968), also cited by the defendant, support the defendant's point. The victim explained her prior inconsistent statements concerning the dates. Such inconsistent statements do not call for the application of the cited rule. *State v. Salkil*, supra.

The defendant also cites numerous other prior inconsistent statements. For example, statements about where the first offense occurred and whether or not an offense occurred on the floor or in a bed. The evidence established that before trial the victim had talked with or been interviewed by numerous people. They included her mother, an investigator, the prosecuting attorney, and a Dr. Snider. She was interviewed in private by Mason Dikeman, a clinical psychologist employed by the defendant. In addition, defendant's counsel took her deposition. From the sketchy statement in the record, it could be concluded the victim was confused as to which incident was being referred to in the question to her at trial or in her statement. The questions switched first from one offense to the other. In view of her age, and the numerous prior statements she gave, the fact such inconsistencies were developed does not cause her trial testimony to be less than substantial evidence. *State v. Presley*, 694 S.W.2d 867 (Mo.App.1985). Her trial testimony concerning the matters referred to in those prior inconsistent statements was clear. For example,

Q. Is that what you told, uh, your mother originally?

A. I told her it happened on the bed.

Q. On the bed?

A. Right.

Q. Okay. So, you first said it happened on the bed?

A. Right.

Q. And then later you changed that and said, "No, it happened on the floor by the bed," is that right?

A. No.

Q. You never said that?

A. I don't remember saying that.

Q. Okay. Now, you did give a statement, didn't you, to Dave Carlton, the investigator there at the prosecutor's office?

A. Right.

Q. You did that on June 7th, didn't you?

A. Right.

Q. And Dave asked you several questions—

A. Right.

Q. —didn't he?

A. (Nods head.)

Q. And he asked you, "The first time there at the house?" Question. And your answer: "Usually, the first time I was in my jammies, I remember that." Question: "Okay, did he, or you, remove your jammies?" Answer: "He did." Question: "The bottoms?" Answer: "Uh-huh." Question: "Okay. What did you do then? Where did you go then?" Answer: "On the bed." Question: "All right. Did he tell you to lay down, or what?" Answer: "No." "Okay. Did you lay down?" Answer: "Uh-huh." "Where did he go?" "On the floor by the bed." Is that right?

A. Right.

It is significant neither the extensive pretrial inquisitions of the victim nor her extensive cross-examination at trial developed any inconsistencies concerning the essential facts of the offenses. *State v. Johnson*, supra.

The defendant also relies upon the fact that the victim did not report the offenses until June, 1984. Reasons for such delay in similar circumstances have been recognized in many cases. Such delay does not require corroboration of a victim's testimony. See *State v. Wilson*, 361 Mo. 78, 233 S.W.2d 686 (1950) and *State v. Bulen*, 646 S.W.2d 405 (Mo.App.1983).

A large part of the defendant's argument on this point is focused upon the issue of whether or not water would run from the shower on the night of December 23, 1983. As stated, the victim testified that it did. The defendant on this point relies heavily on the victim's mother's admission in a deposition that as of January 2, 1984, the water pipes in her house had been frozen for three weeks. The mother at trial testified her deposition statement was incorrect. She explained that she had discovered a check stub showing that she had paid a welding company $128 to thaw the pipes on December 23, 1983. Irrespective of whether or not the water pipes were running on December 23, 1983, that issue goes only to the credibility of the victim. It is not an inconsistent statement concerning an essential fact of the offense that requires corroboration under the cited rule. *State v. Presley*, supra. See also *State v. Chamberlain*, 648 S.W.2d 238 (Mo.App. 1983).

The defendant also argues the testimony of Don Tracy invokes the rule. Don Tracy apparently was a friend of the defendant. Tracy testified that he and the defendant worked three or four hours a day for four days, commencing on December 31, 1983, attempting to thaw the water pipes at the victim's home. His testimony included the fact that during the four days there was a drip of water in the downstairs bathroom. He eagerly testified that while at the home on January 2, 1984, the defendant was not out of his sight.

Again, the defendant does not present inconsistent testimony of a prosecutrix that invokes the cited rule. He is presenting an issue of credibility. It must be noted that Tracy testified that he spent most of the time under the house as he was the one small enough to enter the crawl space. It was further developed that the defendant was in the house to signal Tracy in his work by wiggling the pipes. In answer to a question of whether or not the defendant had to use the rest room, Tracy said, "Richard, uh, he never left my sight, but, no, I don't know." The jury resolved the issue of credibility against Don Tracy.

■ Finally, the defendant does not argue that the acts were so in conflict with common experience to render the victim's testimony incredible. Cf. *State v. Harris*, 620 S.W.2d 349 (Mo. banc 1981); *State v. Baldwin*, supra; *State v. Chaney*, 663 S.W.2d 279 (Mo.App.1983). Such an argument would not take cognizance of the exploding number of cases of such behavior found in the judicial reporters. E.g. see *State v. White*, 674 S.W.2d 551 (Mo.App. 1984); *State v. Burns*, 671 S.W.2d 306 (Mo.

App.1984); *State v. Appelgate,* 668 S.W.2d 624 (Mo.App.1984); *State v. Wilkerson,* 654 S.W.2d 358 (Mo.App.1983); *State v. Chamberlain,* supra. Nor would such an argument take into account the defendant's admission that he picked up a naked 11-year-old girl, with whose mother he lived, and blew into her belly button. This admission is corroboration of the testimony of the victim. It alone renders the cited rule inapplicable. *State v. Bulen,* supra; *State v. Cole,* 581 S.W.2d 875 (Mo.App.1979).

The evidence does not leave "the mind of the court clouded.with doubt." *State v. Baldwin,* supra, at 239.

> As stated in *State v. Davis,* supra, [497 S.W.2d 204] 'resolution of conflicts of evidence and determination of the credibility of witnesses are jury matters and this court is to determine only whether there was substantial evidence to be believed by the jury which would sustain a guilty verdict.' Id. at 207. We conclude the victim's testimony was not so contrary to physical facts, common experiences and surrounding circumstances as to render its validity doubtful, and there was ·sufficient evidence to have submitted the cause to the jury and support its verdict.

*State v. Harris,* supra, at 354. This point is denied.

By separate points, the defendant contends the judgment must be reversed because the date of each offense as submitted in each of the two verdict directing instructions was at variance with the date of each offense charged in the indictment. These points have the following background.

Count I alleged the offense charged occurred "on or about October 1 through October 31, 1983." Count II alleged the offense charged occurred "on or about December 1 through December 31, 1983." The defendant's motion for a bill of particulars concerning the time of the offenses was sustained. A bill of particulars stated that no exact date in October could be specified except that it occurred when the victim's mother took the baby sitter home

and left the defendant with the victim during the late evening. It stated that the offense charged in Count II occurred on January 2, 1984. An amended bill of particulars stated the offense charged in Count I occurred approximately ten days before January 2, 1984. Instruction No. 5 required the jury to find the offense charged in Count I occurred "on or about ten days before January 2, 1984." Instruction No. 7 required the jury to find the offense charged in Count II occurred "on or about January 2, 1984." It should be noted that ten days before January 2, 1984, was December 23, 1983.

By these two points, the defendant asserts each verdict directing instruction was reversibly erroneous in that the instruction was at variance with the date alleged in the indictment thereby

> constituting a new, distinct and separate offense, giving the defendant a right to a preliminary hearing and, in effect, denying him the right to prepare an adequate defense, or to be informed of the nature and cause of the accusation, all in violation of the due process clauses of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 18(a) of the Missouri Constitution.

The points so stated are in such general terms that they can be properly considered only by giving the defendant the benefit of his argument under those points.

 By his brief, he inferentially argues each count of the indictment was invalid because it did not more specifically allege the date of the commission of each offense. This argument ignores a fundamental principle applicable to indictments and informations. An indictment or information which alleges essential facts but fails to set out particulars may be subject to a motion, but is not fatally defective. *State v. Lewis,* 642 S.W.2d 627 (Mo. banc 1982). Unless time is of the essence of an offense, an allegation of time in general terms does not render an indictment invalid. *State v. Murray,* 609 S.W.2d 192 (Mo. App.1980). Time is not of the essence of

rape or of statutory rape, *State v. Bowers,* 29 S.W.2d 58 (Mo.1930); *State v. White,* supra; *State v. Kammerich,* 550 S.W.2d 931 (Mo.App1977). Time is not of the essence of deviate sexual intercourse. *State v. Allen,* 622 S.W.2d 275 (Mo.App.1981). Indictments and informations containing the following general allegations of dates have been approved. An unknown day in January, *State v. Moore,* 642 S.W.2d 917 (Mo.App.1982); March 15 to April 14, 1981, *State v. Edwards,* 657 S.W.2d 343 (Mo.App. 1983); March 15 to November 16, 1976, *State v. Murray,* supra; between January 1 and July 1, 1979, *State v. Allen,* supra. It has been held that an information charging a defendant with a crime that did not state a day, month or year was, nonetheless, not a nullity. *Honey v. Kaiser,* 352 Mo. 1120, 181 S.W.2d 492 (banc 1944). Also see *State v. Cook,* 463 S.W.2d 863 (Mo.1971). The charges contained in Counts I and II of the indictment in question were not invalid because of the statement of the dates in general terms.

■ The defendant premises his remaining arguments upon the proposition that an indictment cannot be amended by a bill of particulars. He cites *State v. Danforth,* 654 S.W.2d 912 (Mo.App.1983) and Rule 23.04. It is true that an indictment that fails to allege the essential facts constituting the offense cannot be made valid by amendment. *State v. Hasler,* 449 S.W.2d 881 (Mo.App.1969). However, the opinion in this case should not be construed as holding that no amendment may be made to an indictment. Citing *State v. Hoyt,* 324 Mo. 837, 24 S.W.2d 981 (1929), it has been observed "in a few cases it has been ruled that the amendment of an indictment was permissible under a statute of criminal jeofails or similar enactment which apparently did not authorize the making of amendments in express terms." Annot., Power of Court to Make or Permit Amendment of Indictment, 17 A.L.R.3d 1181, 1212 (1968). The application of § 545.030, RSMo 1978, has been recognized in a recent case in which the court approved an amendment after conviction to state the date of a prior felony conviction as June 8, 1976, instead of June 6, 1976. *State v. Parker,* 621 S.W.2d 120 (Mo.App.1981). The principle has also been recognized to permit a change in date from between April 12 and 15, 1981, to during April, 1981. *State v. White,* supra. Amendments have also been approved which had the effect of alleging a lesser included offense in the indictment. *Boothe v. State,* 534 S.W.2d 74 (Mo.App. 1976), cert. denied, 429 U.S. 1077, 97 S.Ct. 819, 50 L.Ed.2d 796 (1977); *Hayes v. State,* 501 S.W.2d 508 (Mo.App.1973). However, this subject need not be further pursued. In this case no amendment of the indictment was attempted. Those further interested may see 17 A.L.R.3d 1181, supra; Annot., Amendment of Indictment—Time, 14 A.L.R.3d 1297 (1967).

The general proposition that in the absence of statute or rule, the court may not permit an amendment of an indictment does not mean that a bill of particulars performs no function in respect to an indictment. That function is stated by Rule 23.04. "When an indictment or information alleges the essential facts constituting the offense charged but fails to inform the defendant of the particulars of the offense sufficiently to prepare his defense, the court may direct or permit the filing of a bill of particulars." A bill of particulars performs a vital function of informing the defendant of the details of the offense charged.

As noted, time is not an essential element of sodomy. The general and erroneous allegations of the time in the indictment did not cause either of the two counts to fail to state an offense. The only issue presented is whether or not the variance in dates between the allegations of the indictment and the proof and submission constitutes reversible error.

■ The rule governing the resolution of this issue is well established and has been succinctly stated. "Where time is not of the essence of the offense, the prosecution is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed

on any day prior to the date of the information and within the period of limitations." *State v. Mitts,* 608 S.W.2d 131, 133 (Mo. App.1980). Also see *United States v. Joyner,* 539 F.2d 1162 (8th Cir.1976), cert. denied, 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976); *State v. Kammerich,* supra. Or as stated another way, "[a] variance between allegation and proof is not fatal unless the variance was material to the merits of the case and prejudicial to the defense of the defendant." *State v. Jarrett,* 481 S.W.2d 504, 509 (Mo.1972). Also see *State v. Sallee,* 624 S.W.2d 184 (Mo. App.1981).

In his brief, the defendant argues that because of the variances, his convictions will not bar a prosecution for the same offenses. This argument has been answered.

> Were the evidence probative of the inference that the owned dwelling occupied by the son was also sited in Randolph County ..., then the peril to the defendant of jeopardy from a second prosecution for the same criminal conduct would be *dispelled by the record of the proceedings* which described the subject premises with such particularity as to differentiate the ... dwelling from any others in the venue.

*State v. Kirkpatrick,* 595 S.W.2d 760, 762 (Mo.App.1980) (emphasis added). Also cf. *State v. Donnell,* 598 S.W.2d 569 (Mo.App. 1980). The same answer has been implicitly approved by the myriad cases approving the sufficiency of an indictment or an information charging an offense on an indefinite date, such as between March 15 and November 16, 1976, *State v. Murray,* supra, and similar cases cited above.

Upon oral argument, the defendant's principal contention was that he had been prejudiced because he was unable to properly prepare a defense for the dates submitted to the jury. He cited a motion for continuance that was overruled the morning of trial. He emphasized that the bill of particulars specifying the dates to be proved was filed only a few days before

trial. He insists he was handicapped in presenting an alibi.

The record does not support that contention. The transcript of the pre-trial conference clearly shows the defendant's trial counsel was well aware of the dates to be submitted to the jury. When the motion for a continuance was overruled, defense counsel were permitted to "endorse" three alibi witnesses. They then announced ready for trial.

It was the defendant's position that at the time of the first offense he was at the home of his girl friend, Janie Cole. To establish that alibi, he called as witnesses Janie Cole and her daughter. He did not call Mark Cole who was also endorsed as a witness. In regard to the second offense, the defendant called Don Tracy. Tracy placed the defendant at the victim's home at the time of the second offense. He attempted to provide an alibi which has been previously noted. The record does not suggest any person who could testify to an alibi for the offenses submitted to the jury that was not endorsed or called as a witness.

A conclusion contained in a case cited by the defendant is applicable to and dispositive of the defendant's two points concerning variance. "Further, a variance between an information and an instruction, to be fatal, must be material and prejudicial to the rights of the defendant. ... Here, where the state's response to the bill of particulars adequately informed defendant of the facts involved, no surprise or prejudice resulted. She had adequate notice and opportunity to prepare her defense." *State v. Danforth,* supra, at 922–923 (citations and footnote omitted).

By the next point to be considered, defendant contends the trial court erred in allowing the prosecuting attorney to make improper and prejudicial arguments directly referring to his failure to testify. He cites six instances to establish his point.

■ At the outset, it should be observed that a prosecuting attorney must avoid needless flirtation with prejudicial error.

However, it is not every reference to witnesses and lack of evidence presented by a defendant that constitutes such error. To constitute prejudicial error in violation of the Fifth Amendment, § 546.270 and Rule 27.05, there must be a direct or an indirect reference to the defendant's failure to testify. An indirect reference is not easy to define. The test is whether the comment, when viewed in context, would draw the attention of the jury to the fact that the defendant did not testify. *United States v. Singer,* 732 F.2d 631 (8th Cir.1984); *State v. Frankoviglia,* 514 S.W.2d 536 (Mo.1974); *State v. Hill,* 678 S.W.2d 848 (Mo.App. 1984). For example, it has often been held it is not error for the prosecuting attorney to comment that the state's evidence is uncontradicted or uncontroverted. *State v. Thompson,* 425 S.W.2d 80 (Mo.1968); *State v. Simmons,* 654 S.W.2d 190 (Mo.App.1983). There was a similar decision when a prosecutor said the defendant introduced two photographs. *State v. Robinson,* 641 S.W.2d 423 (Mo. banc 1982). The same is true of a comment upon a defendant's failure to produce evidence. *State v. Simmons,* supra. It has also been held not error for a prosecuting attorney to observe that a tape recorded statement given by a defendant did not explain his actions related in that statement. *State v. Smith,* 641 S.W.2d 463 (Mo.App.1982). It has been squarely held that it was not error for a prosecuting attorney to state that "we cannot get inside of the defendant's mind . . . ." *State v. Hill,* supra, at 850.

▆ A brief statement of the remarks and their context cited by the defendant follows. In explaining the instruction defining "deviate sexual intercourse," the prosecuting attorney stated: "Again, she's the only one that testified about that, and there is no issue except, of course, that they are taking the position that that never occurred. That's what you're here, really, to decide: did that happen or did that not happen?" Then in arguing as to whether or not the child had a motive for fabricating or manufacturing the story, the prosecutor stated: "On motive, let's look at the other witnesses and, again, speaking about the actual crime, there weren't any witnesses." Later in the first portion of the state's closing argument, the prosecutor referred to statements of the defendant to an investigator, immediately prior to this arrest, to the effect that he had, from time to time, picked the little girl up when she was nude and "blew on her belly." The prosecutor stated: "I'm not going to say it's criminal, but that's not really normal activity, and is that suggesting that maybe he wants to kind of tell the truth, but he can't go quite all the way? He had no explanations for why this little girl would say this." In the closing portion of the prosecutor's argument, he stated: "As you [sic] told in the voir dire, there are cases where that's all you have, you only have one person testifying against another. And I have, as the prosecutor, and as the State, given you all the evidence that is available in this case about the actual crime." In commenting upon his inability to give a rational reason for this type of criminal conduct, the prosecutor stated: "I can't stand up here and give you a rational reason for that. And I suggest to you just because the State can't give you a rational reason why he would do it, and why he would do it in that manner, doesn't mean that he ought to be turned loose. I can't crawl into his head and tell you what was going on on any of those things." Finally, the prosecutor stated to the jury: "Now, then, as I have said several times, this is all the evidence that is available in a case like this, one person against another."

Without extended discussion, it is apparent that when considered in context, remarks cited by the defendant fall within the reasoning of the cases cited above and do not constitute prejudicial error. See *State v. Morgan,* 444 S.W.2d 490 (Mo.1969).

Further, the remarks now complained of did not appear to counsel at the time of trial to constitute a direct or indirect reference to the defendant's failure to testify. No objection was made to those remarks. They were not mentioned in his motion for a new trial. The point is properly con-

sidered only under the plain error rule. *State v. Mason*, 588 S.W.2d 731 (Mo.App. 1979).

Indeed, relief should be rarely granted on assertions of *plain error* as to closing argument, for where no objection was lodged, trial strategy is an important consideration and such assertions are generally denied without explication. *State v. Bryant*, 548 S.W.2d 209, 211 (Mo.App.1977). This because the absence of objection, request for admonishment to disregard, or for other relief narrows the trial court's options, requiring uninvited interference with summation and a corresponding increase of the risk of error by such intervention.

*State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982). The remarks complained of did not result in manifest injustice or deprive the defendant of a fair trial. Rule 29.12.

■ The defendant's next point pertains to witness Mason Dikeman. The following is the background for that point. Mason Dikeman is a clinical psychologist. He was employed by the defendant's sister and paid by the defendant. The sister persuaded the victim's mother to talk to Dikeman. The mother understood Dikeman was treating the defendant. The mother was not told Dikeman would be a witness. The mother talked with Dikeman about what had happened. She then permitted Dikeman to privately interview the victim.

The defendant's first contention under this point is that the trial court erred because it held Dikeman was incompetent to testify as to all statements made by the victim and her mother regarding the alleged offense. This contention has no factual basis.

During his opening statement, the defendant's counsel told the court Dikeman had a waiver permitting him to testify. He added that Dikeman has a professional theory based upon his psychological training as to why this little girl may have fabricated this story. After further dialogue the court stated: "Well, I am not going to let—I don't consider whether a witness is

telling the truth to be a proper subject matter for expert testimony." Defense counsel replied, "I agree." The court then told defense counsel in view of the waiver he would permit him to proceed but that did not mean he was going to let the evidence in later. Defense counsel then told the jury he expected Dikeman to testify why the little girl may have fabricated these stories. There was no mention of statements by the victim or her mother at this point.

The defendant presented Dikeman as his last witness. The court asked defense counsel what was the anticipated proof. Defense counsel stated he had two purposes. One was to prove an inconsistent statement of the victim that she had seen her mother and the defendant in a sexual act. Defense counsel then stated,

[a]nd the other purpose for putting him on would be to qualify him as having talked with young girls who have been molested before, because he not only has talked to the young girls, but has also talked to their molesters, so it was admitted case of molestation. And then, to have him compare how, or to state the differences, if any, between certain acts that [the victim] has done, certain things she has done, as compared with those who, those children who he knows for sure have actually been molested.

The court ruled, "The, the prior inconsistent statement, of course, he will be allowed to testify about." The court added, "I am not allowing, though, anything in the nature of a rape syndrome or, I guess in this case, you would call it child molestation syndrome, of the child." It developed that Dikeman, in fact, did not have a waiver. Nonetheless, after it was established that the child did not see Dikeman for treatment, he was permitted to testify concerning the alleged inconsistent statement. By several questions and answers he related the details of that alleged inconsistent statement. Defendant's first contention is denied because it is contrary to the record.

The defendant's second contention under this point is that trial court erred in refusing the defendant's

request to make an offer of proof thereon in violation of the Revised Statutes of Missouri, Section 491.060, in that, said testimony if presented to the jury would have given a psychological basis for a reasonable theory of the victim's motive for her accusations against the defendant to the effect that the victim felt inadequate and desired attention; coupled with her proclivity to her mother's new boyfriend and adversity to the defendant.

This second contention also has no factual basis. After it was finally determined Dikeman could testify concerning the alleged inconsistent statement, defense counsel stated, "With regard to the Court's ruling on the rape syndrome, my question is whether the Court, in order for the record to be absolutely clear, I want to be sure that, that I don't waive the offer, that the Court knows what it is?" The court replied, "I understand what it is and I am denying the offer of proof and we're not going to get into that." The trial court did not prevent the defendant from making an offer of proof. It correctly ruled testimony within defendant's offer of proof concerning a child molestation syndrome would not be admitted. Cf. *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984).

Defense counsel had expressly agreed the credibility of a witness was not the subject of expert testimony. At no time did the defendant tender the offer of proof mentioned in this second contention in the point under consideration. Even had he done so, it would have been correctly rejected. In rejecting evidence of a rape trauma syndrome to bolster the testimony of a prosecutrix, the Supreme Court said, "However, expert opinion testimony is not admissible as it relates to credibility of witnesses." *State v. Taylor*, supra, at 239. For the reasons stated, the defendant's second contention has no merit.

By the last point, the defendant contends the trial court erred in failing to grant a new trial on Count I on the basis of newly discovered evidence. The point has the following background. As stated, the victim testified on the night of the first offense the defendant had turned on the shower in the downstairs bathroom and she heard it running. The mother had testified in a deposition that the pipes were frozen, but at trial related that she had found a check stub indicating she paid a welding company $128 to thaw the pipes on that day.

To support this basis for a new trial, the defendant attached to his motion the affidavit of an employee of the welding company. The affidavit states he was able to supply running water to the washer on the porch and cold water to the kitchen sink, but was unable to supply running water to the downstairs bathroom. It is of interest to note that Tracy found no running water in the house except a drip of water in the downstairs bathroom.

Whether or not a new trial should be granted upon the basis of newly discovered evidence is within the discretion of the trial court. *State v. Cole*, 657 S.W.2d 59 (Mo. App.1983). Among the requirements that a movant must satisfy in order to obtain a new trial upon the basis of newly discovered evidence are "the evidence is so material that it would probably produce a different result on a new trial" and "the evidence is not cumulative only or *merely of an impeaching nature.*" *State v. Taylor*, 589 S.W.2d 302, 305 (Mo. banc 1979) (emphasis added).

In view of the numerous interrogations of the victim, and her unswerving and unimpeached testimony concerning the essential facts of the offenses, newly discovered evidence would be unlikely to produce a different result. It is decisive to observe that the newly discovered evidence was *merely of an impeaching nature.* *State v. Coleman*, 660 S.W.2d 201 (Mo.App.1983). The point is denied and the judgment is affirmed.

PREWITT, C.J., and HOGAN, FLANI-GAN, GREENE and CROW, JJ., concur.

TITUS, J., dubitante.