**STATE of Missouri,
Plaintiff-Respondent,**

v.

**John M. DOUGLAS,
Defendant-Appellant.**

**No. 14294.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 24, 1986.

James D. McNabb, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

In three counts the defendant was charged with having committed two acts of sodomy upon his step-granddaughter C.W. and one act of sodomy upon his step-granddaughter T.P. A jury found him guilty of each count. In accordance with the verdicts he was sentenced to imprisonment for 15 years on each count. The sentences were ordered to run consecutively. The defendant states six points on appeal.

The following is an outline of the basic facts. The defendant and his wife lived in a small community in northwest Greene County. C.W. was born January 7, 1972. T.P. was born August 18, 1974. They lived in a mobile home with their mother and stepfather in Polk County. Two younger brothers also lived with them. Shortly before August 23, 1984, when the children started school, the defendant and his wife moved to a small house near the mobile home. The mother and stepfather left for work at 6:00 a.m. and returned at 5:00 p.m. Arrangements were made for the grandmother and the defendant to care for the children while the mother and stepfather were at work. Their duties included getting the children out of bed, dressed, fed and off to school. The children returned from school about 3:30 p.m.

On October 3, 1984, the entire family was in the mobile home. At that time the mother heard C.W. yell to the defendant, "You're not going to hurt me anymore." The mother questioned C.W. concerning

the meaning of this exclamation, in the hearing of the defendant. C.W. told her mother that defendant had been committing anal sodomy upon her. She said it happened more than once. C.W. told of the acts in graphic, childlike terms. T.P. told her mother that the defendant had done the same thing to her.

The mother called the stepfather to the room. Upon being told of the girls' revelation, the stepfather asked the defendant if he really did the acts. There was no response. The stepfather slapped the defendant and dragged him to the living room. There he asked the defendant the same question five or six times. At no time did the defendant deny he committed the offenses. Apparently, the stepfather assaulted the defendant as the defendant was taken to the hospital.

The defendant had been with the children's grandmother for ten years. They had been married for seven years. The defendant was a disabled cook, 46 years old. He testified and denied the charges. His testimony also included the following. He was not in the mobile home when C.W. supposedly told of his abuse. The three persons who said he was there were lying. The stepfather, without explanation, came into the yard and hit him. He continued that he and the grandmother would go to the mobile home at 6:00 a.m. She never left him alone with the children. They made the bed in their house in the evenings. None of the children ever played outside before or after school while the mother and her husband were at work. In August it was cold in the morning. "Every morning it was cold."

The defendant called his wife, the victims' grandmother, as a witness. By parts of her testimony she corroborated the defendant. However, her testimony also included the following. The defendant was in the mobile home when C.W. told of his abuse. The stepfather did slap the defendant while in a chair in the mobile home. She did leave the mobile home in the mornings to return to her house to make the bed. Her testimony concluded with the following. "I mean, when they was out of school, they was always outside playing."

The defendant's first point is that the evidence is insufficient to support his convictions because the testimony of the victims was so inconsistent, contradictory and in conflict with common experience as to leave the court clouded with doubt and their testimony was not corroborated. He cites the rule stated in *State v. Baldwin*, 571 S.W.2d 236 (Mo.banc 1978), requiring corroboration in such circumstances.

The victims related the incidents of abuse to their mother. They made statements to a doctor. They testified at the preliminary hearing. They testified at the trial. Inconsistencies between those statements concerning the time of the day and dates upon which the acts of abuse occurred were developed by cross-examination. It is significant that such cross-examination was permeated with confusion of the witness by questions based upon a misstatement of the witness' prior testimony. For example, C.W. was asked, "Did you tell him that it happened on Monday, or Tuesday, or Wednesday?" She replied, "Yes." She was later asked, "You said it happened on Monday, Tuesday, and Wednesday, in the morning, on the day before you went to the doctor. Do you remember saying that?" At first C.W. did not respond. On further questioning she answered, "Yes."

■ There has been doubt expressed concerning the efficacy of the rule the defendant cites. *State v. Ellis*, 710 S.W.2d 378 (Mo.App.1986). However, assuming it to be a viable rule, for two reasons it does not establish the insufficiency of the evidence. These inconsistencies did not relate to the essential elements of the offenses. It would be unlikely the victims could so graphically describe the degenerate acts had those acts not occurred. Their statements concerning the details of those acts were remarkably consistent. For this reason the rule does not apply. *State v. Ellis*, supra; *State v. Smith*, 679 S.W.2d 899 (Mo.App.1984).

Second, the testimony of the victims was corroborated. "It is clear in Missouri that

the silence of an accused when not under arrest and in circumstances such that only a guilty party would remain silent, is admissible as being in the nature of an admission against interest." *State v. Peebles*, 569 S.W.2d 1, 2 (Mo.App.1978). Also see *State v. Samuel*, 521 S.W.2d 374 (Mo.banc 1975); *State v. Koster*, 684 S.W.2d 488 (Mo.App.1984). Certainly, C.W.'s accusation in the presence of the defendant, the defendant's wife and the children's mother called for a reply. The repeated questions of the stepfather "naturally would call for a reply." *State v. Samuel*, supra, at 375. The defendant's first point has no merit.

The defendant's second point is that the trial court erred in refusing to declare a mistrial because of improper argument by the prosecuting attorney. That argument is as follows: "Sex crimes are terrible. Think, also, the facts [sic]. These girls, and this man, the girls are 10 and they're 12 when it happened. You can infer that those girls may never have normal sexual relations with anyone. Their normal sexual relations could be ruined for the rest of their lives."

The defendant cites *State v. Mayhue*, 653 S.W.2d 227 (Mo.App.1983). In that rape prosecution the prosecuting attorney argued, "Everyday of her life she will be raped in her mind...." Id. at 237. However, *Mayhue* does not aid the defendant. In that case the court merely held the trial court did not err in not declaring a mistrial sua sponte.

■ A prosecuting attorney should not inflame the passions or prejudices of the jury against a defendant. *State v. Swenson*, 551 S.W.2d 917 (Mo.App.1977). But, "[p]rosecutors are permitted wide latitude in arguing the necessity for law enforcement and the jurors' responsibility in that regard in line with the punishment to be assessed." *State v. Wilkerson*, 616 S.W.2d 829, 835 (Mo.banc 1981). "He may argue all the evidence and any reasonable inferences drawn therefrom." *State v. Swenson*, supra, at 919.

■ In *State v. Linder*, 613 S.W.2d 918 (Mo.App.1981), a prosecution for promoting prostitution of a minor, the prosecuting attorney urged the jury to consider how long the victim was going to carry scars because of the defendant's actions. That argument was found permissible. In *State v. Thompson*, 531 S.W.2d 63 (Mo.App. 1975), a prosecution for sodomy upon a 14–year-old child, the prosecuting attorney urged the jury to consider how long the child would bear scars from the nightmare events of the incident. That argument also was found permissible. The trial court did not err in failing to declare a mistrial. *State v. Hampton*, 653 S.W.2d 191 (Mo. banc 1983).

The defendant's third point is that the trial court erred in not dismissing Count I because there was no evidence to support the charge he committed an offense in Polk County on August 20, 1984. He argues there was no evidence he was in Polk County before August 23, 1984. C.W. testified the defendant abused her once in his house in Greene County; that he abused her ten times in the mobile home in Polk County, but she couldn't remember the dates. In essence, the defendant asserts a variance between the charge and the proof.

■ Though such an assumption is not required by consideration of all the evidence, assuming there was no evidence such an offense was committed in Polk County before school commenced on August 23, 1984, the point has no merit. "Time is not of the essence of deviate sexual intercourse." *State v. Ellis*, supra, at 384. The charge was not invalid because of the general statement of the date. *State v. Ellis*, supra. Further "[w]here time is not of the essence of the offense, the prosecution is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed any day prior to the date of the information and within the period of limitation." *State v. Mitts*, 608 S.W.2d 131, 133 (Mo.App.1980). Also see *State v. Kammerich*, 550 S.W.2d 931 (Mo. App.1977). "A variance between allegation

and proof is not fatal unless the variance was material to the merits of the case and prejudicial to the defense of the defendant." *State v. Jarrett,* 481 S.W.2d 504, 509 (Mo.1972).

The defendant did not contend he was not in the mobile home on August 23, 1984, or any subsequent school day before October 4, 1984. Rather, he claimed he was never alone with C.W. He said his wife never left the mobile home and the children did not play outside because it was too chilly in August. He did not contend he had an alibi. There is no way a variance from August 20, 1984, to August 23, 1984, prejudiced the defendant. The point is denied.

The defendant's last three points are based upon assertions the three verdict directing instructions were erroneous because of the indefinite submissions of the times of the offenses. Instruction No. 5 submitted a finding that an act was committed upon C.W. on or about August 20, 1984. Instruction No. 6 submitted a finding that an act was committed upon C.W. on or about September 30, 1984. Instruction No. 7 submitted a finding that an act was committed upon T.P. on or about September 1, 1984.

By his fourth point the defendant contends Instruction No. 5 was erroneous because there was no evidence to support a finding an act was committed upon C.W. on August 20, 1984. Again, assuming there was no evidence an offense was committed in Polk County before school started on August 23, 1984, the point, nevertheless, does not establish error.

■ Under the circumstances of this case, it was not required that the instruction submit a finding the offense was committed on a precise date. *State v. White,* 621 S.W.2d 287 (Mo.1981). Also see *State v. Palmer,* 306 S.W.2d 441 (Mo.1957); *State v. Childers,* 268 S.W.2d 858 (Mo. 1954). Contra where a defendant is prejudiced by such a submission. *State v. Bowles,* 360 S.W.2d 706 (Mo.1962); *State v. Chittin,* 261 S.W.2d 79 (Mo.1953). The "term 'on or about' a date means 'approxi-

mately' that date." *State v. Newhart,* 539 S.W.2d 486, 490 (Mo.App.1976). The evidence supported the submission of the commission of an offense in Polk County on approximately August 20, 1984. Cf. *State v. Childers,* supra.

By his fifth point the defendant contends Instruction No. 6 was erroneous. He first argues there was no evidence to support a finding an act was committed upon C.W. on September 30, 1984. He cites *State v. Hankins,* 612 S.W.2d 438 (Mo.App.1981). That case does not aid him. It approves a submission of "on or about" where there was no evidence of alibi and the evidence did not make the time of decisive importance. His first argument has no merit for the same reasons a similar argument under his fourth point had no merit.

■ The defendant next argues Instruction No. 6 was erroneous because the act submitted was not distinguished from the act submitted by Instruction No. 5. He concludes he was thereby impermissibly placed in double jeopardy in the case under consideration. There was evidence the defendant abused C.W. in Polk County ten times during the period from August 23 to October 4, 1984. The defendant did not, at the close of the evidence, present a motion that the state be required to elect which act or acts it would rely upon for conviction. Cf. *State v. Taylor,* 335 Mo. 460, 73 S.W.2d 378 (1934), 95 A.L.R. 476 (1935); *State v. Baker,* 434 S.W.2d 583 (Mo.1968); *State v. Gillespie,* 336 S.W.2d 677 (Mo.1960); *State v. Cobb,* 359 Mo. 373, 221 S.W.2d 745 (1949); *State v. Hamilton,* 263 Mo. 294, 172 S.W. 593 (1915) (questioned on another basis in *State v. Amende,* 338 Mo. 717, 92 S.W.2d 106 (1936)). Also see *Covington v. State,* 703 P.2d 436 (Alaska App.1985); *People v. Estorga,* 200 Colo. 78, 612 P.2d 520 (banc 1980); *Crawford v. State,* 696 S.W.2d 903 (Tex.Cr.App.1985). He does not contend the jurors might not have unanimously agreed which of the acts were committed. See *Murphy v. State,* 355 So.2d 1153 (Ala.Cr.App.1978). Further, in similar circumstances it has been held "the testimony as to the various acts of rape

was all the same. No particular act was singled out and given special evidentiary treatment. The evidence was such that the jury would have to believe either that all the acts were committed, or none of them." *Thacker v. Commonwealth,* 453 S.W.2d 566, 570 (Ky.1970). Also see *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173 (banc 1984); *State v. Loehner,* 42 Wash.App. 408, 711 P.2d 377 (1985). Still further, the court gave MAI–CR2d 2.70. In view of that instruction, the evidence and the dates in the verdict directing instructions, it is impossible to conclude the jury did not unanimously find two distinct offenses were committed on or about the dates submitted. *State v. Trimble,* 654 S.W.2d 245 (Mo.App.1983). Cf. *State v. Ellis,* supra; *State v. Fletcher,* 709 S.W.2d 924 (Mo.App. 1985); *State v. Mudd,* 703 S.W.2d 63 (Mo. App.1985).

■ The defendant's final argument under this point is that the instruction is so vague as to time that it impermissibly places him in danger of double jeopardy in a future prosecution. That argument has been made in reference to an information lacking specificity as to date or other details of the commission of the act. It has been consistently held that the argument has no merit because "[a] court may look to the whole record to determine the validity of a plea in abatement based on former jeopardy." *State v. Trimble,* supra, at 259. Also see *State v. Murray,* 609 S.W.2d 192 (Mo.App.1980); *State v. Siems,* 535 S.W.2d 261 (Mo.App.1976). In a subsequent prosecution, the court "may, if necessary, receive and consider parol evidence." *State v. Trimble,* supra, at 259.

The same argument has been made concerning the failure of an instruction to hypothesize the precise manner in which an offense was committed. That argument has been held to have no merit for the reason stated above. *State v. Trimble,* supra. Logic and precedent demonstrate the defendant's last cited argument concerning the submission of the approximate time of the offense has no merit for the same reason. *State v. Ellis,* supra.

That logic is apparent when there has been but one offense committed by a defendant upon any one victim. It is less apparent when evidence of a series of such offenses committed by a defendant upon the same victim is submitted in an initial prosecution. No Missouri case has been cited or found setting forth how to determine the validity of a plea of former jeopardy in a second prosecution on one of a series of offenses when there has been a lack of specificity in the information and in the submission in the first prosecution. That issue is not now before the court and will not be decided. For those interested, it has been held that "[r]ationally, this leads the attorney and the Court to the conclusion that any prosecution under a subsequent indictment would be foreclosed if the offense charged was one which would have supported a conviction under the earlier indictment." *Tincher v. Boles,* 364 F.2d 497, 498 (4th Cir.1966). Or, generalized another way,

When time is not of the essence of an offense and the state is not confined in its proof to any specific date within the statute of limitations, a prosecution therefor will usually operate as a bar to a subsequent prosecution for this offense committed within the period of limitation at any time prior to the filing of the information or indictment.

22 C.J.S. Criminal Law § 280 (1978). Also see *Murphy v. State,* 355 So.2d 1153 (Ala. Cr.App.1978); *Bustamante v. People,* 136 Colo. 362, 317 P.2d 885 (1957); *Miller v. State,* 141 Ga.App. 382, 233 S.E.2d 460 (1977); *Thacker v. Commonwealth,* supra; *State v. Bundy,* 684 P.2d 58 (Utah 1984). The defendant's fifth point has no merit.

By his sixth point the defendant contends Instruction No. 7, which submitted the commission of an act of abuse upon T.P. on or about September 1, 1984, was erroneous. He supports that point by the same arguments advanced in support of his fifth point. T.P. testified the defendant abused her five times in the mobile home. She said the last time was the day the defendant was taken to the hospital. The defend-

ant's sixth point is denied upon the same basis his fifth point was denied. The judgment is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.