**STATE of Missouri, Respondent,**

v.

**Larry Gene ELLIOTT, Appellant.**

**No. 14903.**

Missouri Court of Appeals,
Southern District,
Division One.

July 28, 1987.

Motion for Rehearing or Transfer
to Supreme Court Denied
Aug. 10, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Janet M. Thompson, Columbia, for appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for respondent.

LAWRENCE O. DAVIS, Special Judge.

Appellant was found guilty by a jury of second degree assault and sentenced as a persistent offender to eight years in the custody of the Missouri Department of Corrections and Human Resources. By the sole point on appeal the trial court is charged with error for not, *sua sponte*, declaring a mistrial when on two separate occasions during examination of the state's chief witness a reference was made to appellant giving testimony. The first was a statement made during direct examination by the prosecuting attorney in response to an objection by defense counsel, and the second was an unsolicited remark made by the witness during cross-examination. No

objection to either statement was made by appellant during trial, nor was the point preserved in his post-trial motion. We are asked to consider and reverse this conviction under the doctrine of plain error. We hold that the appellant has failed to show any manifest prejudice affecting his substantial rights and affirm.

Some understanding of the facts is necessary to view the challenged comments in the context in which they were made. In February 1985, about four months prior to the assault giving rise to the case on review, appellant showed up, uninvited, at a house party given by his cousin, the victim of this assault. When appellant became obtrusive one of the guests complained to the victim who then asked the appellant to leave his house. Appellant refused whereupon a fight ensued. In the course of this struggle appellant suffered several cuts on his face and, even though his cousin, the victim and chief witness herein, called it a "draw," the clear implication is that in that fight appellant came out second best.

This defeat apparently chagrined appellant and festered in his mind until he accosted his cousin for a rematch in June. The rematch gave rise to this charge. Although on the day following the February fight appellant sought to borrow, and the victim agreed to loan him, $20, at that time, and in the weeks following, appellant openly threatened that he would get even and that no one could do what the cousin had done to him and get away with it.

The rematch came about on the evening of July 21, 1985, in Holland, Missouri, when the victim and his girl friend, Shiela, stopped their Thunderbird at the request of appellant and his girl friend, Lisa. The first contact that evening occurred in the street near Shiela's mother's home where the victim and Shiela had gone to deliver Shiela's little brother. Appellant and Lisa drove up in a pickup and parked behind the Thunderbird. Lisa came up to the Thunderbird and told Shiela that appellant wanted to talk to "her." Both vehicles then circled the block and drove "uptown" with Shiela parking the Thunderbird on the street directly across from the Holland city hall and appellant parking his pickup on a closed service station lot nearby. The vehicles were 50 to 75 feet apart and Shiela walked over to the appellant's pickup to talk with Lisa. Appellant then left his pickup and approached the victim who was seated on the passenger side of the Thunderbird. While there was testimony that appellant had a knife at that time, there was no contact between the men and the victim chased appellant back to his pickup. While on opposite sides of the truck, appellant extracted a shotgun from the driver's side and shot his cousin who had managed to get several yards away. Some of the pellets struck the victim in the neck and shoulder.

The contested statement made by the prosecutor was made to the court and was intended to forecast what the *victim*, if allowed to testify, would say that Lisa told Shiela during the *first* encounter at Shiela's mother's house. The prosecutor inadvertently misspoke the word "defendant" instead of "witness" in the course of the following colloquy given in response to defense counsel's hearsay objection:

"Q. Were you in the street or driveway?

[Question by prosecutor]

A. We was in the street. [Answer by victim]

Q. Who was driving?

A. Shiela was driving.

Q. Okay.

A. And I was just sittin' over there—well, I got a Thunderbird car with seats that lays down, I was just sittin' over there relaxed. But, anyway, uh, uh, Lisa Hemphill, who is another girl, she come up and told Shiela, you know, that Larry [appellant]—

MR. COLEMAN: I object to—

THE WITNESS: —wanted to talk to her.

MR. HAZEL: Well, Judge, this is, once again, this is not offered for the proof of what Lisa Hemphill said. If the *Defendant* is permitted to testify he will testify she said something to Shiela, Shiela got out and went over, and then the Defendant got out of the truck, came over and

talked to *him.* Otherwise I don't know how the jury will be able to understand what all transpired if he's not, if he's going to object every time he mentions what someone else said. It's relevant to show why Tommy did what he did and it's not offered for the proof of what is said. (Emphasis added.)

THE COURT: Objection overruled. We'll let him answer.

THE WITNESS: Well, anyway, uh, Shiela said, 'Well', said, 'we'll talk to him,' she said, 'just meet us uptown.' Well, anyway, uh, on the way—

MR. HAZEL: Q. Well, was the—Who was Lisa Hemphill with?

A. She was with Larry [appellant] in the pickup at the time."

The critical words uttered by the prosecutor, "If the Defendant is permitted to testify—," even when taken out of context, carry a somewhat ambiguous meaning, and arguably would not draw the jury's attention to the defendant's failure to take the stand or his right not to do so. The incident occurred about one-half way through the testimony of the first of five state witnesses. Appellant called no witnesses nor did he testify.

The second statement of which the appellant complains was uttered spontaneously by the victim during his cross-examination about the earlier February fight and refers to the lack of use of any kind of weapon in that fight. Defense counsel was attempting to rebut the victim's direct testimony that the fight was a "draw."

"A. He [appellant] looked pretty rough. His face was cut, his eyes was cut. [Answer by victim]

Q. Did he have any bandages on [the next day]? [Question by defense counsel]

A. Umm, not on his face he didn't have no bandages. I don't know about any place else. But, now, you can ask Larry [appellant] sittin' there, *if he wants to testify,* he'll tell you quick the only thing I hit'im with was my hands. I didn't, I didn't, I didn't use a dadgummed thing. Only thing I did was get'im off of me. But as for a bandage—" (Emphasis added.)

It is well established that both direct and indirect references to the appellant's failure to testify or his right not to testify are prohibited. *State v. Arnold,* 628 S.W.2d 665 (Mo.1982); § 546.270, RSMo 1978, Rule 27.05(a), Missouri Rules of Criminal Procedure (18th ed. 1987). However, as observed by Judge Titus in *State v. Wickline,* 647 S.W.2d 929 (Mo.App. 1983), the court on appeal must view the challenged comment in the context in which it appears, and, when viewed in that context, to be objectionable must be of a type which would cause a jury to infer that the remark was a reference to the accused's failure to testify. *Id.* at 931. The trial court is in the best position to observe the effect of contested statements. *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970). From the lack of any response by defense counsel or the court it would appear that neither statement added any emphasis to what became apparent, i.e., appellant did not testify. When reviewing a conviction under the plain error doctrine we are instructed to disturb the trial court's decision only where the reference to the appellant's failure to testify is direct and certain. *State v. Hutchinson,* 458 S.W.2d 553 (Mo. banc 1970). Also under plain error review we will reverse only for prejudicial errors which so substantially affected the appellant's rights that a manifest injustice inexorably results if left uncorrected. *State v. Valentine,* 646 S.W.2d 729 (Mo.1983). We must consider whether the jury's attention was drawn to the appellant's absence from the witness stand. *State v. Brannson,* 679 S.W.2d 246 (Mo. banc 1984).

Although the use of key words such as "defendant" and "testify" is important in determining prejudicial effect, these words do not trigger any automatic formula and the statement must be analyzed for the effect of those words within the overall context of their usage. *State v. Ellis,* 710 S.W.2d 378 (Mo.App.1986). Clearly a comment made directly to the jury by the prosecutor during opening statement or in closing argument would have a greater impact

than one spontaneously made to the judge in response to an objection. Equally clear is the conclusion that an unsolicited and unexpected statement volunteered by a lay witness during cross-examination will normally have even less impact on the jury.

The comment of the prosecutor was a slip of the tongue and grammatically doesn't make sense when the word "defendant" is used instead of "witness." The pronoun "him" must refer to the witness as the "defendant" could not get out of the truck, come over and talk to the "defendant." The court and counsel and undoubtedly the jury realized what the prosecutor was attempting to say. We hold that the misstatement had no prejudicial effect.

■ On the other hand, while the volunteered statement of the witness did refer directly to the accused it does not comment upon his failure to testify or his right not to testify. The witness merely makes the rather offhanded comment to the effect that there sits the accused, if he wants to he will verify what I'm telling you. The statement carries no implication that the appellant doesn't have to testify or that he isn't going to testify. It would not be understood by any juror as a pronouncement of law or trial strategy. It is a neutral statement without legal or trial significance. When a witness unexpectedly volunteers an inadmissible statement the trial court is in the best position to judge the effect on the jury and invoke an appropriate remedy. *State v. Walker*, 531 S.W.2d 55 (Mo.App.1975). We hold that the witness' statement had no prejudicial effect on the jury.

The judgment and sentence are affirmed.

CROW, C.J., and GREENE, P.J., concur.